IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THOMAS W. CUNNINGHAM,

        Plaintiff,

v.                                      CIV 13-1037 JCH/KBM

DAVID FOX AND KEITH SANDY,

        Defendants.

## __PROPOSED FINDINGS__
## __AND__
## __RECOMMENDED DISPOSITION__

**THIS MATTER** comes before the Court on Defendants' Martinez Report (*Doc. 28*) and Defendants' Joint Motion for Summary Judgment Based on Qualified Immunity and Supporting Memorandum (*Doc. 34*), filed November 13, 2014, and January 2, 2015, respectively. Plaintiff filed a response and objections to the Martinez Report (*Doc. 32*) on December 11, 2014, as well as a response to the motion for summary judgment (*Doc. 35*) on January 23, 2015. Defendants filed a reply to the Martinez Report (*Doc. 33*) on January 2, 2015, and to the motion for summary judgment (*Doc. 36*) on February 6, 2015. Also before the Court is Plaintiff's Motion Requesting an Order of a Non-Party Member to Release Medical Records (*Doc. 29*), filed November 25, 2014. The Honorable Judith C. Herrera referred this matter to me on October 28, 2013, to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. *Doc. 3.*

Having considered the parties' submissions, the relevant law, and the record in this case, the Court recommends that Plaintiff's Motion Requesting an Order of a Non-Party Member to Release Medical Records be denied and that Defendants' Motion for Summary Judgment be granted.

## I.     Background

On October 23, 2013, Thomas W. Cunningham ("Plaintiff"), proceeding *pro se*, filed a Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 in this Court. *Doc. 1.* Thereafter, he filed an Amended Complaint (*Doc. 13*) on February 13, 2014. Construing his Amended Complaint broadly, Plaintiff alleges that Defendants' actions violated his state and federal constitutional protections against unreasonable search and seizure, unlawful arrest, false imprisonment/unlawful imprisonment, malicious abuse of process/malicious prosecution, and excessive force causing physical injury. *See Doc. 13.*

In August 2012, Plaintiff filed a lawsuit involving the same incident at issue here, *Cunningham v. City of Albuquerque*, 12cv1052 JCH/LAM (D.N.M. Oct. 15, 2013) ("Plaintiff's previous lawsuit"). In that case, The Honorable Judith C. Herrera granted the defendants' motion for summary judgment and dismissed Plaintiff's claims, including claims for excessive force, failure to provide medical attention, conspiracy to commit excessive force, failure to intervene, and illegal investigation.[1] *Cunningham*, 12cv1052 JCH/LAM, *Doc. 52* at 1-2.

---

[1] In Plaintiff's previous lawsuit, he asserted claims against the City of Albuquerque, Defendant Fox, Officer Vollmer, Albuquerque Fire Department, and a Paramedic Unit.  *See Cunningham*, 12cv1052 JCH/LAM.  Although Defendant Sandy was not a named party in that suit, the Court read Plaintiff's submissions liberally and concluded that he was likely one of the "Four or Five Unidentified Vice Officers" named in Plaintiff's Complaint. *Cunningham*, 12cv1052 JCH/LAM, *Doc. 45* at 3 n.3. Accordingly, the Court analyzed an excessive force claim against Defendant

As to any unreasonable search and seizure claim, however, Judge Herrera reasoned that pursuant to the *Younger* abstention doctrine, she lacked power to direct the actions of the state court, in which Plaintiff was the subject of an ongoing criminal prosecution. *Id.* at 3. Because the state courts had not yet resolved the validity of the search warrant in the context of Plaintiff's criminal prosecution, the Court concluded that it could not consider Plaintiff's civil rights claim for unreasonable search and seizure. *Id.* at 3 (citing *Southwest Air Ambulance, Inc. v. Las Cruces*, 268 F.3d 1162, 1177 (10th Cir. 2001) for the proposition that federal courts should not interfere with state court proceedings by granting injunctions or declaratory judgments regarding constitutional issues in proceedings where the state forum provides an adequate avenue for relief). Judge Herrera also specifically found that "dismissal of the claims . . . before the Court in [Plaintiff's previous lawsuit] . . . would <u>not</u> preclude Plaintiff from being able to bring a claim for damages under Section 1983 based on the execution of an invalid search warrant." *Id.* at 4. Noting that a § 1983 unlawful arrest claim is separate and distinct from a § 1983 excessive force claim, she concluded that "Plaintiff . . . may be able to pursue a damages claim based on an unlawful arrest regardless of this Court's dismissal with prejudice of the claims currently before the Court." *Id.* at 4.

In Count V of Plaintiff's Amended Complaint in the present case, Plaintiff, once again, alleges excessive force resulting in physical injury rising from the same incident. *See Doc. 13* at 4. In a *sua sponte* Memorandum Opinion and Order issued in this case in March 19, 2014, Judge Herrera held that Plaintiff's excessive force claim is barred by the doctrine of *res judicata*, as it was already adjudicated by her in Plaintiff's previous

---

Sandy, determining that Defendant Sandy did not use excessive force. *Cunningham*, 12cv1052 JCH/LAM, *Doc. 52* at 6.

lawsuit. *See Doc. 12*. Additionally, Judge Herrera dismissed Plaintiff's claims against Defendants City of Albuquerque, Vollmer, Montoya, Meek, Sullivan, and Peck for failure to allege personal involvement. *See id.* at 3. As a result, the only claims remaining before the Court are claims against Defendants David Fox and Keith Sandy for unreasonable search and seizure, unlawful arrest, false imprisonment/unlawful imprisonment, and malicious abuse of process/malicious prosecution.

The following facts are either undisputed by the parties or, where disputed, are presented in the light most favorable to Plaintiff.   Facts set forth in Defendants' Motion for Summary Judgment that are not specifically controverted by Plaintiff are deemed undisputed.[2] *See* D.N.M. LR-Civ. 56.1(b).

On December 20, 2011, Defendant Fox swore in an affidavit that in the preceding seventy-two (72) hours a confidential informant, with whom he had previously worked and received reliable information, informed him that crack cocaine was being sold from room 222 at the Best Choice Inn[3] in Albuquerque, New Mexico by a male with the nickname "JT." *Doc. 28*, Ex. A, at 2. According to Defendant Fox's affidavit, the confidential informant was provided a sum of U.S. Currency and instructed to purchase crack cocaine from "JT." *Id.* The affidavit indicates that officers maintained surveillance

---

[2] The Court notes that Plaintiff's response does not identify any material facts cited by Defendants that are in dispute, as required by D.N.M.LR-Civ. 56.1 and Federal Rule of Civil Procedure 56(e).  Defendants argue that the Court may grant summary judgment based solely upon these procedural defects.  The Court, however, declines to recommend the granting summary judgment without consideration of the merits of Plaintiff's claims and will instead consider the legal contentions and factual assertions contained within Plaintiff's response brief, though not technically compliant with Local Rule 56.1 or Federal Rule of Civil Procedure 56(e).

[3] "Best Choice Inn" is used interchangeable with "Best Choice Motel" and "Best Choice Hotel" in the various affidavits provided to the Court.  *Compare Doc. 28*, Ex. A *with Doc. 8*, Ex. L *and Doc. 28*, Ex. A.  However, there appears to be no confusion over the location of the subject search and seizure.  For the sake of consistency, the Court will therefore refer to the hotel as "Best Choice Inn."

while the confidential informant approached room 222 of the Best Choice Inn, made contact with the occupant, stepped inside for two or three minutes, and then proceeded to a predetermined location where the confidential informant then turned over to the detectives a substance that tested presumptively positive for crack cocaine. *Id.*

Based upon these facts, Defendant Fox sought a search warrant from Second Judicial District Judge Samuel L. Winder for room 222 of the Best Choice Inn at 7640 Central Ave. SE, which Judge Winder issued on December 20, 2011. *Doc. 28*, Ex. J, at 6. Defendant Fox's affidavit identified the property subject to the warrant as "[i]llegal narcotics and/or any other controlled substance(s) and/or suspected illegal narcotics and/or any other suspected controlled substance(s) including, but not limited to any drug or substance listed in Schedules I through V of the Controlled Substance Act or regulations adopted thereto." *Doc. 28*, Ex. A, at 1.

On December 21, 2011, Defendants Fox and Sandy, while acting in their official capacity as sworn law enforcement officers for the Albuquerque Police Department, participated in the execution of the search warrant at the Best Choice Inn. *Doc. 28*, Ex. J & L. The officers present at the execution of the warrant were dressed in police tactical attire.  Doc. 28, Ex. K, at ¶ 6. Detective Matthew Vollmer instructed Plaintiff in a clear, authoritative tone, "POLICE, WARRANT, GET DOWN ON THE GROUND."[4] *Id.* at ¶ 4-5. Plaintiff did not comply with Detective Vollmer's instructions, and, instead, quickly entered room 222 and attempted to remove from his clothing a small package containing a substance consistent with the appearance of crack cocaine. *Id.* at ¶ 5.

Plaintiff also attempted to physically resist the orders of Defendant Sandy during

---

[4] Detective Vollmer's affidavit does not provide information as to Plaintiff's whereabouts when he instructed him to get on the ground.  *See Doc. 28*, Ex. K.

the execution of the search warrant, refusing to take, or remain in, a prone position while the room was being cleared and other subjects in the room were being detained. *Doc. 28*, Ex. L, at ¶ 5. Defendant Sandy applied non-lethal force to Plaintiff to ensure that he could not harm, endanger, or interfere with the officers' execution of the search warrant. *Doc. 28*, Ex. L, at ¶ 6. More particularly, he used an adapted tactical variation of the standard law enforcement "facedown stabilization" technique, placing his foot between Plaintiff's shoulder blades. *Doc. 28*, Ex. L, at ¶ 8. The execution of the search warrant at room 222 yielded narcotics (i.e. cocaine) and narcotics paraphernalia, and Plaintiff was arrested. *Doc. 28*, Ex. L at ¶ 11.

In the context of an interlocutory appeal in a separate criminal case[5] arising from the execution of the same search warrant, the New Mexico Court of Appeals entered a notice on September 23, 2013, proposing summary reversal of the state district court's determination that the search warrant for room 222 of the Best Choice Inn was valid. *Doc. 28*, Ex. T. Exactly one month later, Plaintiff filed this federal lawsuit. *Doc. 1.* On November 12, 2013, the New Mexico Court of Appeals finalized its decision suppressing evidence obtained pursuant to the search warrant. As a result of this holding, the Second Judicial Assistant District Attorney filed a *nolle prosequi* in Plaintiff's criminal case on January 7, 2014, indicating that the State was dismissing the charges against Plaintiff "due to the suppression of all evidence seized following the issuance of a search warrant which the New Mexico Court of Appeals found to lack the requisite information to justify the warrant." *Doc. 28*, Ex. R.

---

[5] Brooklin Ortega was the subject of the separate criminal prosecution in state court who filed an interlocutory appeal challenging the state court's denial of her suppression motion. *See New Mexico v. Brooklin Ortega*, D-202-CR-2012-00142.  Ms. Ortega was arrested along with Plaintiff, at the execution of the subject search warrant.  *See id.*

## II.    Legal Standards

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ P. 56(a). The moving party "bears the initial burden of making a prima face demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). Once this initial burden is met, the burden shifts to the nonmoving party to present specific, admissible facts from which a rational trier of fact could find for the nonmoving party. *Id.* at 671. The nonmoving party may not rest on his or her pleadings, but must set forth specific facts "identified by reference to affidavits, deposition transcripts or specific exhibits incorporated therein" showing there is a genuine issue for trial. *Id.* "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. . . . An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings. To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc*., 366 F.3d 869, 875 (10th Cir. 2004) (internal citations omitted).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). In order to defeat an assertion of qualified

immunity in a summary judgment motion, a plaintiff must, first, properly allege the deprivation of a constitutional right and, second, show that the constitutional right was clearly established at the time of the violation. *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011). Although the plaintiff bears the burden of making the two-part showing to defeat qualified immunity, courts must "construe the facts in the light most favorable to the plaintiff as the nonmoving party." *Id.* at 1238.

A court must review pleadings of a *pro se* plaintiff liberally, holding them to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This does not mean, however, that the Court should "assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## III.   Analysis

In his Amended Complaint, Plaintiff brings claims under 42 U.S.C. § 1983 and presumably the New Mexico Tort Claims Act for alleged violations of the federal and New Mexico constitutions including  unreasonable search and seizure, unlawful arrest, false imprisonment/unlawful imprisonment, and malicious abuse of process/malicious prosecution. *See Doc. 13*. Factually, he alleges that Defendants executed an invalid search warrant unsupported by probable cause,[6] which caused him to be unlawfully arrested and "continuously seized" from December 2, 2011 to January 3, 2014.

---

[6] Although Defendants address the issue of facial validity, arguing that police officers enjoy qualified immunity for executing a facially valid warrant, *see Doc. 34* at 8, under the Court's reading of Plaintiff's Amended Complaint, Plaintiff is not alleging that the search warrant was facially invalid, only that it was so lacking in probable cause that no reasonable officer would rely upon it.  Indeed, Plaintiff seems to rely primarily upon the rationale of the New Mexico Court of Appeals, which did not address any facial deficiencies in the warrant or supporting affidavit. Further, the Court is satisfied that the warrant provided sufficient particularity, including the

### A.  Plaintiff's Motion for Records

In his Motion Requesting an Order of a Non-Party Member to Release Medical Records, Plaintiff asks this Court to order the Metropolitan Detention Center's ("MDC") Medical Department to release medical records concerning injuries to his rib area sustained during his arrest by Defendants on December 21, 2011. According to Plaintiff, MDC has not responded to his request for such information, which, he asserts is "mandatory for the Plaintiff to prove injury in this case." *Doc. 19* at 2. Defendants respond, indicating that they "take no position Plaintiff's Motion," as they will not be impacted by any relief provided in response. *Doc. 30* at 1.

As discussed herein, this Court dismissed Plaintiff's claim for excessive force resulting in personal injury in this case in its March 19, 2014 Memorandum Opinion and Order.  Plaintiff's excessive force claim was previously decided by the Court in *Cunningham v. City of Albuquerque New Mexico*, 12cv1052 JCH/LAM (D.N.M. Oct. 15, 2013), and the claim is now barred by the doctrine of *res judicata*. The Court will not revisit Plaintiff's claim that Defendant Sandy used excessive force by placing his foot on Plaintiff's chest or back. Medical records related to any injuries sustained to Plaintiff's rib area during his arrest have no bearing on the claims remaining in this action. Accordingly, Plaintiff's Motion for Records will be denied.

### B.  Defendants' Motion for Summary Judgment

#### i.  Claims for Unreasonable Search and Seizure and Unlawful Arrest

Count I and IV of Plaintiff's Amended Complaint are interrelated.  In Count I, Plaintiff alleges that Defendants executed an invalid search warrant, which he contends

---

address and room number of the premises to be searched, the time the search was to occur, as well as the items for which the officers were to search.

they should have known was not supported by probable cause. *Doc. 13* at 3. In Count IV, he alleges that Defendant Fox submitted an affidavit for a search warrant that did not establish probable cause and that the execution of this warrant caused Plaintiff to be unlawfully arrested and continuously seized from December 21, 2011 to January 3, 2014. *Doc.13* at 8. In short, both Count I and VI are premised upon a lack of probable cause to support the search warrant issued by Judge Winder on December 20, 2011, and executed by officers on December 21, 2011.

When a plaintiff asserts a claim for unlawful search or seizure pursuant to a search warrant, as here, courts have reasoned that "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or  . . . in 'objective good faith.'" *Messerschmidt v. Millender*, 132 S. Ct. 1235 (2012). In *United States v. Leon*, 468 U.S. 897 (1984),[7] the Supreme Court explained that "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination" because "[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Id.* at 921. The Tenth Circuit has since held that "a state judge's probable cause finding is not only a relevant factor, but a significant one as well." *United States v. Corral-Corral*, 889 F.2d 927, 939 (10th Cir. 1990).

Yet, the mere issuance of a search warrant by a neutral magistrate does not end the inquiry. *Id.* Instead, the court must also consider whether it is "obvious that no

---

[7] Although *Leon* involved application of the exclusionary rule as a remedy for a Fourth Amendment violation, the Supreme Court has applied the same standard of objective reasonableness in considering whether to grant qualified immunity to officers who rely on allegedly invalid warrants.  *See, e.g., Malley v. Briggs*, 475 U.S. 335, 344 (1986).

reasonably competent officer would have concluded that a warrant should issue."
*Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity is not available when a
warrant is "based on an affidavit so lacking in indicia of probable cause as to render
official belief in its existence entirely unreasonable." *Id.* at 923.

Here, Judge Winder's issuance of the subject search warrant, though not
dispositive, weighs in favor of a finding that Defendants acted in an objectively
reasonable manner when they applied for and executed the warrant. And, significantly,
Judge Winder was not the only member of the judiciary to determine that the search
warrant was supported by probable cause. The state district judge who presided over
the Plaintiff's criminal prosecution as well as the prosecution of Brooklin Ortega, Judge
Kenneth Martinez, considered the warrant and affidavit in the context of suppression
motions and agreed with Judge Winder that the search warrant was supported by
probable cause. *See New Mexico v. Cunningham*, D-202-CR-201200141 and *New
Mexico v. Ortega*, D202-CR-201200142.[8] Ultimately, the New Mexico Court of Appeals
disagreed with both state district judges, concluding that the warrant was not supported
by probable cause. *See Doc. 28*, Ex. T. Still, the Tenth Circuit has reasoned that when
multiple judges considering the same affidavit reach differing conclusions as to the
existence of probable cause, it suggests that the officer's reliance on the issuing judge's
probable-cause determination was reasonable. *Corral-Corral*, 899 F.2d at 939. This
disagreement among state district and appellate judges as to the existence of probable

---

[8] The Court takes judicial notice of the state court dockets for these state criminal cases, which
are available using the New Mexico State Judiciary Case Lookup Application.  *See Binford v.
United States*, 436 F.3d 1252, 1256 n.7 (10th Cir. 2006) (reasoning that a court may take
judicial notice of facts that are a matter of public record); *Stack v. McCotter*, No. 02-4157, 79 F.
App'x 383, 391-92 (10th Cir. 2003) (noting that a federal court may take judicial notice of docket
sheet entries in related state court proceedings).

cause provides further support that a reasonably competent officer could have believed that the warrant should issue.

When considering whether an officer's reliance on a warrant was objectively reasonable, another consideration is whether the underlying documents are "devoid of factual support." *Corral-Corral*, 899 F.2d at 939. Examining the factual support for the subject warrant here, the Court notes that it includes a tip received by Defendant Fox from a purportedly reliable confidential informant in the preceding 72 hours that there was ongoing illegal drug activity in room 222 of Best Choice Inn and that a male, who went by the nickname "JT," would sell crack cocaine to the confidential informant. The affidavit goes on to recount a controlled buy that took place while the confidential informant remained under surveillance sometime within that 72-hour period.[9] Given these supporting facts, the Court cannot say that reliance on the warrant was objectively unreasonable or that the warrant was "devoid of factual support." Nor does Plaintiff offer any facts or argument to support a conclusion that Defendants' actions, in applying for and executing the search warrant, were objectively unreasonable.

Further, in the context of a qualified immunity defense on an unlawful search or arrest claim, courts determine whether a defendant violated clearly established law "by asking whether there was 'arguable probable cause'" for the officers' conduct. *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014). "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable,

---

[9] The Court acknowledges that the affidavit may not have included the precise time when the controlled buy in order to protect the confidential informant. The controlled buy may well have occurred much closer in time to the issuance of the warrant than 72 hours. Nevertheless, given the language of the affidavit, the issuing magistrate judge could not assume that the controlled buy occurred immediately prior to the application for the warrant. This Court will likewise refrain from making such an assumption.

even if mistaken, belief that probable cause exists." *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007). At a minimum, the Court must consider whether there was clearly established law that might negate arguable probable cause.

The New Mexico Court of Appeals determined that the information contained in the search warrant's supporting affidavit – that is, that a confidential informant had performed a controlled buy at a specific hotel room in the preceding 72 hours – was insufficient to establish probable cause for the search of the room. *Id.* at 4. The court reasoned that "[w]here a warrant permits a search of a motel room, given the transient manner in which they are used, it is particularly important that the affidavit contain sufficient information of ongoing criminal activity to justify a search warrant and avoid staleness." *Id.* at 5. In reversing the state trial court, the Court of Appeals relied upon two of its previous decisions. In both *State v. Whitley*, 993 P.2d 117 (N.M. Ct. App. 1999), *limited on other grounds by State v. Williamson*, 212 P.3d 376 (N.M. 2009) and *State v. Lovato,* 879 P.2d 787 (N.M. Ct. App. 1994), the New Mexico Court of Appeals held that information supporting search warrants for drugs in motel rooms was stale, where the information referred to narcotics activity that had occurred forty-eight and seventy-two hours, respectively, before the issuance of the warrants. *Whitley*. 993 P.2d at ¶ 6-10; *Lovato*, 879 P.2d at 790.

In *Lovato*, the court explained that

[a]lthough seventy-two hours is not necessarily an extensive amount of time between a reliable informant's observation and the issuance of a search warrant, under the facts and circumstances of the instant case, the affidavit fails to support a conclusion that criminal activity at the motel room was of an ongoing, continuous nature.

*Id.* at 790. The language used in the supporting affidavit at issue here is arguably more suggestive of *ongoing* narcotics activity than the language at issue in *Whitely*[10] and *Lovato.*[11] According to Defendant Fox, the confidential informant advised him that room 222 was "*selling* narcotics." *Doc. 28*, Ex. A, at 2 (emphasis added). More particularly, the informant, who reported having seen narcotics in the hotel room in the preceding 72 hours, told Defendant Fox that room 222 "sold crack cocaine" and that "a male that goes by the nickname 'JT' *would sell* her narcotics." *Id.* (emphasis added). Accordingly, the search warrant at issue here is arguably distinguishable from those at issue in *Whitley* and *Lovato*.

Furthermore, although they involved admittedly similar fact patterns, *Whitley* and *Lovato* were decisions of the New Mexico Court of Appeals. In the context of Plaintiff's § 1983 claims, these decisions simply do not amount to clearly established law. In order for the law to be clearly established, there must be an on-point decision from the Supreme Court or the Tenth Circuit or "the clearly established weight of authority from other courts must have found the law to be as a plaintiff maintains." *See Schwartz v. Booker*, 702 F.3d 573, 587 (10th Cir. 2012). The two New Mexico Court of Appeals decisions simply do not rise to the level of clearly established law in the context of qualified immunity. In the only other case the Court located that discusses the staleness

---

[10] In *Whitley*, the affidavit indicated that a confidential informant "has observed Paul Whitley sell marijuana in the past (48) forty-eight hours."  *Whitley*, 993 P.2d at 117. Thus, while the affidavit contained more recent information, it reflected only a single transaction which had occurred in the past.

[11] Although the affidavit at issue in *Lovato* indicated that "heroin was being sold out of the . . . motel room," the court found that the affidavit did not support a conclusion of ongoing criminal activity, because it did not contain the names or any identifying information for individuals who were allegedly dealing drugs in the motel room; nor did it provide their status with respect to the hotel room.  *Lovato*, 897 P.2d at 788.

of information in the context of a hotel room search, the Eighth Circuit believed that a 16-day delay from the observation of criminal evidence in a hotel room until issuance of the search warrant did not "vitiate probable cause." *See United States v. Golay*, 502 F.2d 182, 187 at n.10.

Additionally, in the words of the New Mexico Court of Appeals "there is no set formula" for ascertaining whether information in a search warrant is stale, even as it relates to drug activity in a hotel room. *See Whitley*, 993 P.2d at 119. Rather, "staleness involves a variety of considerations, including not only time, but also the character of the crime and the extent of prior activity, the consumable or transferable nature of the items to be seized, the information known about the suspect and his or her habits, and the location to be searched." *Id.* Here, upon conducting a more thorough analysis of the affidavit, including considerations particular to the crime and location at issue, the Court of Appeals ultimately determined that the affidavit at issue was insufficient for a finding of probable cause and ordered suppression of evidence resulting from the search in the criminal case. This is not to say, however, that the officers applying for and executing the warrant are thereby subject to liability for civil rights violations.

This Court considers Plaintiff's civil rights claims under the rubric of a reasonably competent officer. In doing so, it finds that, given the circumstances of this case, it would not have been "entirely unreasonable" for an officer to believe that his observation of a controlled buy at a hotel room sometime within the preceding 72 hours, together with information from the confidential informant that "JT" was *selling* narcotics at that location, provided probable cause to search the hotel room for narcotics and related materials. Put another way, the Court cannot say that the issue of staleness was

one so obvious that a reasonable officer would have recognized the error of the state judge in issuing the warrant. *See Messerschmidt*, 132 S. Ct. at 1249. Indeed, the nuances of the law regarding staleness were not so obvious to preclude a reasonably competent officer from applying for a warrant under the circumstances. Indeed, the doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011).

Plaintiff also maintains that it is "not true" that a confidential informant "reported to [Defendants] a location selling crack that just happen [sic] to be my room." *Doc. 13* at 4. Plaintiff alleges that Defendants had, weeks earlier, threatened to find a reason to arrest him if he did not provide particular information to them in a separate investigation. He also suggests that Defendants gained knowledge of illegal drug activity not from a confidential informant but from a prior illegal search. *Doc. 13* at 4. According to Plaintiff, the confidential informant referred to in Defendant Fox's affidavit "may not exist." *Doc. 35* at 3-4. Plaintiff also maintains that Defendants must identify the confidential informant as there are "so many ways that the alleged [confidential informant] could derail the Defendant's qualified immunity defense." *Id.* at 2-3. Plaintiff does not develop this argument, however, and the Court cannot surmise how the identity of the confidential informant would support Plaintiff's unreasonable search and seizure claim. Plaintiff's competing positions – that the confidential informant may not exist and that revealing her identity would "derail the Defendants' qualified immunity defense" – are pure conjecture and speculation. Moreover, Plaintiff's arguments concerning the identity of the confidential informant were fully adjudicated in state court.

In Plaintiff's criminal case in state court, the state district judge ordered prosecutors to "produce Officer Fox to Judge Kenneth Martinez for an *in camera* review to reveal the confidential informant in the above styled case." *Doc. 33*, Ex. A. There is no indication on the state court docket that Officer Fox failed to comply with Judge Martinez's order or that Judge Martinez suppressed any evidence as a result of his *in camera* review of information related to the confidential informant. *See* Docket entries in case number D-202-CR-201200141, New Mexico State Judiciary Case Lookup Application, https://caselookup.nmcourts.gov. Instead, the matter proceeded, with Judge Martinez denying Plaintiff's motion to suppress, until the State filed its *nolle prosequi* following the Court of Appeals' decision in *New Mexico v. Ortega*, No. 33,117 (N.M. Ct. App. Sept. 23, 2013).

Plaintiff relies upon *Beard v. City of Northglenn, Colo.*, 24 F.3d 110 (10th Cir. 1994) for the proposition that an officer who deliberately submits a false affidavit thereby waives qualified immunity. *Doc. 35* at 3. While it is true that a warrant does not protect officers who misrepresent facts when applying for warrants, such as the existence of a confidential informant, it is Plaintiff's burden to "make a substantial showing of deliberate falsehood or reckless disregard for the truth" by the officer seeking the warrant. *See Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014). Here, Plaintiff fails to make a "substantial showing" that Defendant Fox deliberately falsified his affidavit by fabricating information regarding the confidential informant or the controlled buy. Rather, he merely makes unsworn, conclusory statements that the confidential informant "may not exist." *See Doc. 35* at 3-4. Additionally, he alleges in his Amended Complaint that the confidential informant's report that room 222 was selling crack

17

cocaine "just dose [sic] not work because that's not true." *Doc. 13* at 4. The only

pertinent evidence before the Court – the affidavit of Defendant Fox and the denial of

Plaintiff's suppression motion following the state court ordering Defendant Fox to reveal

the confidential informant in camera -- suggests that neither the controlled buy nor the

confidential informant were fabricated by Defendant Fox. Plaintiff's unsubstantiated

allegations as to the fabrication of the confidential informant, on the other hand, carry no

probative weight in summary judgment proceedings. *See Bones*, 366 F.3d at 875.

In sum, Defendants acted in an objectively reasonable manner in applying for

and executing the subject search warrant based upon arguable probable cause and

they violated no clearly established law in those endeavors. As such, the Court

concludes that Defendants are entitled to qualified immunity with respect to Plaintiff's

unlawful search and seizure claims under § 1983.

Additionally, the Court finds that the circumstances do not implicate any more

expansive rights with respect to unreasonable searches and seizures under the New

Mexico constitution,[12] and the Court's analysis of the reasonableness of Defendants'

conduct therefore applies with equal force to Plaintiff's state-law claim. For these

reasons, the Court will recommend to the presiding judge that summary judgment be

granted in favor of Defendants on Plaintiff's claims for unreasonable search and

seizure.

---

[12] The facts do not trigger, for instance, protections based upon the warrantless search of an automobile, *see State v. Gallegos*, 70 P.3d 1277, 1280 (N.M. Ct. App. 2003),  a search warrant based solely on sworn oral testimony in the absence of a written affidavit, *see State v. Boyse*, 303 P.3d 830 (N.M. 2013), or a detention and questioning at a border checkpoint in the absence of reasonable suspicion, *see State v. Cardenas-Alvarez*, 25 P.3d 225, 232-33 (N.M. 2001).

### ii.   Unlawful Arrest Claim

With respect to Plaintiff's claim for unlawful arrest, for which he provides no independent supporting facts in his Amended Complaint,[13] Defendants are also entitled to qualified immunity. "When a warrantless arrest is the subject of a § 1983 action, the officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to make the arrest." *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1191 (10th Cir. 2007). Given the undisputed facts before the Court – that Plaintiff, during the execution of the search warrant, attempted to dispose of narcotics while in the plain sight of officers, that he resisted being detained and attempted to impede the execution of the search warrant, and that narcotics were found in the hotel room that he occupied – the Court has no difficulty concluding that Defendants had probable cause to arrest him. The Court recommends that summary judgment be granted in favor of Defendants on Plaintiff's unlawful arrest claim on the basis of qualified immunity.

### iii.   False Imprisonment Claim

Plaintiff also alleges a false imprisonment claim pursuant to § 1983 and Article II, § 18, of the New Mexico Constitution. More particularly, Plaintiff alleges that he was unlawfully detained between December 21, 2011 and January 3, 2014.[14]

---

[13] Defendants take the position that Plaintiff "has not alleged a claim for unlawful arrest." *Doc. 36* at 9. In his Amended Complaint, Plaintiff alleges "Unlawful Arrest" in addition to "unreasonable searches and seizures." *Doc. 13* at 3. The facts supporting his unlawful arrest claim, however, are indistinguishable from those supporting his unreasonable search and seizure claim – that is, that "defendants executed an invalid search warrant that lack[ed] probable cause." *Id.*

[14] The Court takes judicial notice that Plaintiff was indicted and arrested in a separate criminal case in April 2012, with conditions of release entered April 30, 2012. *See* Docket entry in case number D-202-CR-201201932, New Mexico State Judiciary Case Lookup Application, https://caselookup.nmcourts.gov.

"Under New Mexico law, false imprisonment consists of intentionally confining or restraining another person without consent and with knowledge that he has no lawful authority to do so." *Romero v. Sanchez*, 895 P.2d 212, 215 (1995). Notably when an officer has a good faith and reasonable belief in the lawfulness of his actions, he is not liable for false imprisonment or false arrest. *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006). As discussed above, Defendants had a good faith, reasonable belief in the lawfulness of their actions in requesting and executing the search warrant at room 222. Furthermore, Defendants had probable cause to arrest Plaintiff, at minimum for the possession of narcotics. "An officer who has probable cause to arrest a person cannot be held liable for false arrest or imprisonment, since probable cause provides him with the necessary authority to carry out the arrest." *Santillo v. N.M. Dep't of Pub. Safety*, 173 P.3d 6, 12 (N.M. Ct. App. 2007).

Similarly, Plaintiff's false imprisonment claim under § 1983 fails for the same reason his unreasonable search and seizure and unlawful arrest claims fail – that is, because Defendants had arguable probable cause to seek and execute the warrant and probable cause to arrest Plaintiff.  Nor has Plaintiff demonstrated that clearly established law imposed a duty on Defendants to release him based upon the vitiation of probable cause. To do so, Plaintiff must show that "even though probable cause supported his initial arrest, clearly established law gave fair warning to [Defendant officers] that [once probable cause was vitiated] it was [their] constitutional duty to release him." *See Panagoulakos v. Yazzi*, 741 F.3d 1126, 1130 (10th Cir. 2013). Here, no clearly established law imposed on Defendants a duty to release Plaintiff at any time prior to

the filing of a *nolle prosequi* following the New Mexico Court of Appeals' determination that the search warrant was invalid.

Accordingly, the Court recommends that summary judgment be granted in favor of Defendants on Plaintiff's false arrest/false imprisonment claims.

### iv.   Malicious Prosecution Claim

Finally, Plaintiff alleges claims for "Malicious Abuse of Process / Malicious Prosecution" in violation of Article II, § 10 and 18, of the New Mexico Constitution as well as under the Fourth and Fourteenth Amendments of the United States Constitution. *Doc. 13*, at 4.

The Tenth Circuit has recognized the viability of a malicious prosecution claim under § 1983. *Taylor v. Meacham*, 82 F.3d 1556, 1560 (10th Cir. 1996). To establish such a claim, a plaintiff must show that "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages. *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).

Likewise, under New Mexico law, malicious abuse of process is defined by the following elements "(1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages." *Dawley v. Law Puerta Architectural Antiques, Inc.*, 62 P.3d 1271 (N.M. Ct. App. 2002).

In support of his malicious abuse of process and malicious prosecution claims, Plaintiff alleges that when Defendants arrested him they were "making good on their threat from weeks earlier" that they would "find a reason" to arrest him if he "did not provide them with information." *Doc. 13* at 4. In essence, Plaintiff alleges that Defendants' primary motive for his arrest was an illegitimate end.

Defendants cite *Calvert v. Ediger*, 415 F. App'x 80, 83 (10th Cir. 2011) (unpublished opinion) for the proposition that "[w]ith respect to a § 1983 action for malicious prosecution, the 'principal player in carrying out a prosecution . . . is not police officer but prosecutor.'" *Doc. 34* at 15. Defendants insist that the independent decision of the prosecutor in bringing charges, and the grand jury in issuing an indictment, "constitute a superseding cause the breaks the chain of causation" in Plaintiff's malicious prosecution claim. *Id.* at 16. Defendants insist that because Plaintiff does not allege that they either confined or prosecuted Plaintiff, they are entitled to summary judgment on Plaintiff's malicious prosecution and malicious abuse of process claims.

But Defendants analysis is oversimplified. The fact that a prosecutor decides to prosecute, or that a grand jury decides to indict, does not automatically immunize an officer from liability for malicious prosecution. Even *Calvert*, the case upon which Defendants primarily rely, acknowledges that "officers are not shielded from liability [on malicious prosecution claims] if a causal connection can be established demonstrating that the prosecutor's and court's actions were not truly independent causes." *Calvert,* 415 F. App'x at 83.

Indeed, in *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004), the Tenth Circuit held that a prosecutor's decision to indict and prosecute the plaintiff did not shield a

forensic analyst from civil liability for malicious prosecution, where the analyst flagrantly misrepresented evidence to the prosecutor. *Id.* at 1292. There, the court concluded that the analyst, though not responsible for prosecuting the plaintiff, was instrumental in his continued confinement and prosecution. *Id.* at 1291-92. Quoting Judge Posner of the Seventh Circuit, the court explained that defendants "cannot hide behind the officials whom they have defrauded." *Id.* at 1292. Additionally, in *Fletcher v. Burkhalter*, 605 F.3d 1091 (10th Cir. 2010), a case cited by Plaintiff, the court rejected a defendant's argument that the approvals of the district attorney and judge absolved him of liability on a malicious prosecution claim based upon errors in his affidavit for an arrest warrant.

Nevertheless, although officers who misrepresent material facts in affidavits for warrants are not necessarily insulated from malicious prosecution claims, here, Plaintiff has not presented sufficient evidence from which a reasonable jury could determine that Defendants in fact made material misrepresentations. Indeed, Plaintiff has not presented *any* evidence to establish that Defendants fabricated or misrepresented information in the affidavit for the search warrant or to prosecutors. Instead, he has merely made bald, speculative allegations that a confidential informant "may not exist."

In the absence of evidence that Defendants made material misrepresentations to prosecutors or to the Court, Plaintiff must demonstrate malice by establishing that Defendants lacked arguable probable cause to search his hotel room and to arrest him. *See Stonecipher v. Valles*, 759 F.3d 1134, 1146-47 (10th Cir. 2014). As discussed above, both the search and arrest were supported by at least arguable probable cause.

For these reasons, the Court recommends that summary judgment be granted in favor of Defendants on Plaintiff's malicious prosecution and malicious abuse of process claims.

### v. Rule 56(d) Request

Embedded in Plaintiff's response brief is a request, under Federal Rule of Civil Procedure 56(d), for additional time to develop his legal claims. *Doc. 34* at 4. Plaintiff argues that he is unable to properly develop a defense to Defendants' summary judgment motion because he has limited access to a law library. *Id.* at 4. But Rule 56(d) does not afford a plaintiff additional time to develop his legal claims or his understanding of the law; instead, it is an avenue for a non-movant to show, by affidavit or declaration, that the court should withhold ruling on a summary judgment motion in order that he may further develop *the facts. See* Fed. R. Civ. P. 56(d). "A party seeking to defer a ruling on summary judgment under [Rule 56(d)][15] must file an affidavit that explains why facts precluding summary judgment cannot be presented. This includes identifying the probable facts not available and what steps have been taken to obtain these facts." *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006).

Here, Plaintiff provides no affidavit specifying how additional factual development would assist him in resisting summary judgment. While he appears to allege that the identity of the confidential informant would assist him withstanding summary judgment, this allegation constitutes mere speculation and fails to satisfy the specificity requirements of Rule 56(d). Moreover, limited access to case law and legal materials does not suffice under Rule 56(d).

---

[15] *Trask* was decided before Rule 56(f) became Rule 56(d). *See Marshall v. Wyoming Dept. of Corr.*, No. 14-8033, 2014 WL 6679650 (10th Cir. Nov. 25, 2014). *Trask* refers to the former Rule 56(f), and this Court has substituted the present rule, Rule 56(d) to avoid confusion.

## IV.    Conclusion

Wherefore,

**IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary

Judgment (*Doc. 34*) be **granted** and that Plaintiff's claims be **dismissed with**

**prejudice.**

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion Requesting an Order of

a Non-Party Member to Release Medical Records (*Doc. 29*) be **denied**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a

copy of these Proposed Findings and Recommended Disposition they may file written

objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A**

**party must file any objections with the Clerk of the District Court within the**

**fourteen-day period if that party wants to have appellate review of the proposed**

**findings and recommended disposition.   If no objections are filed, no appellate**

**review will be allowed.**

---

_____

UNITED STATES CHIEF MAGISTRATE JUDGE